IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL MEYERS, | : Civil No. 1:25-CV-1617 |
| Plaintiff, | : |
| v. | : (Judge Wilson) |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, Commissioner of Social Security, | : |
| Defendant. | : |

REPORT AND RECOMMENDATION

## I. Introduction

Daniel Meyers filed applications under Titles II and XVI of the Social Security Act for disability and disability insurance benefits and supplemental security income on August 2, 2021.[1] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Meyers was not disabled from his alleged onset date of April 19, 2021, through August 28, 2024, the date of the ALJ's decision.[2]

Meyers now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record,

---

[1] Tr. 17.
[2] Tr. 19, 45-46.

and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we recommend the court affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Meyers filed for disability and disability insurance benefits, as well as supplemental security income, alleging disability due to stents in two arteries going to his heart, clostridioides difficile, acute/subacute ischemic stroke in the left occipital lobe, and vertebral artery atherosclerotic disease with likely artery to artery emboli.[4] Meyers was 43 years old at the time of his alleged onset of disability and had at least a high school education.[5]

The medical record regarding Meyers' impairments revealed that he began experiencing headaches and vision changes in July of 2021.[6] At

---

[3] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[4] Tr. 79.
[5] Tr. 44.
[6] Tr. 412, 415.

that time, he was admitted to Hershey Medical Center ("HMC") and diagnosed with acute/subacute ischemic stroke in the left posterior cerebral artery of his left occipital lobe.[7]

In September of 2021, Meyers was admitted to the emergency department complaining of right-sided numbness and dizziness.[8] An MRI confirmed new small foci of acute ischemia on his left cerebellum, and a CTA revealed bilateral distal vertebral artery occlusions as well as chronic left occipital infarct.[9] Meyers was diagnosed with acute left cerebellar cerebrovascular accident ("CVA"), with vertebral occlusion.[10] Another MRI that month showed multilevel degenerative disc disease.[11] Later in September, Meyers returned to the emergency department because of a burning pain in his right eye that progressed to numbness on the entire left side of his body.[12] He was diagnosed with a stroke and coronary artery disease.[13]

[7] Tr. 434, 441.
[8] Tr. 609.
[9] Tr. 612, 615-16, 618.
[10] Tr. 621.
[11] Tr. 696.
[12] Tr. 560.
[13] Tr. 573-74.

Meyers consulted with a neurosurgeon in January of 2022 and was diagnosed with severe stenosis bilaterally at the vertebral arteries.[14] Meyers returned to the emergency department in September of 2022 after a sudden onset of left-sided chest pain radiating to his neck and arm.[15] He was admitted to the acute cardiology program at HMC, where he was diagnosed with unstable angina.[16] Two days after that diagnosis, Meyers underwent cardiac catheterization.[17]

In January of 2023, Meyers underwent a CT cerebral perfusion study, which revealed a small area of encephalomalacia in his left occipital lobe corresponding to a previous infarction, and moderate stenosis in the left posterior cerebral artery.[18] Later in January, Meyers had a neuro-ophthalmology evaluation at HMC, measuring 20/30-2 in his right eye and 20/40-1 in his left eyes, which improved to 20/25 in both

---

[14] Tr. 487-88.
[15] Tr. 774.
[16] Tr. 776.
[17] Tr. 785.
[18] Tr. 931-32.

eyes with pinhole testing.[19] Meyers was diagnosed with right homonymous visual field defect.[20]

Meyers received an x-ray on his knee in February of 2023.[21] That imaging showed a small osteochondral defect of the medial femoral condyle, mild degenerative changes with tricompartmental changes, and moderate osteo arthritis.[22] In July of 2023, he was evaluated for knee and leg pain and diagnosed with right knee pain, localized edema, and right leg pain.[23] In December of 2023, Meyers again sought emergency care, this time for escalation of months-long chest pain.[24] He was diagnosed with coronary artery disease and underwent cardiac catheterization.[25]

It is against the backdrop of this record that an ALJ held a hearing on Meyers' disability application on August 8, 2024.[26] Meyers and a

---

[19] Tr. 967-68.
[20] Tr. 970.
[21] Tr. 975.
[22] *Id.*
[23] Tr. 1076.
[24] Tr. 1222.
[25] Tr. 1224.
[26] Tr. 52-77.

Vocational Expert ("VE") both appeared and testified at this hearing.[27] Following this hearing, on August 28, 2024, the ALJ issued a decision denying the plaintiff's application for disability benefits.[28] The ALJ first concluded that Meyers met the insured status requirement through December 31, 2025, and had not engaged in substantial gainful activity since his alleged onset date of April 19, 2021.[29] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of lumbar and cervical spine degenerative disc disease, knee impairment, peripheral vascular disease, cardiac condition status post myocardial infarction and stenting status post CVA, vision impairment (residual of CVA), and obesity.[30] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[31]

[27] *Id.*
[28] Tr. 17-46.
[29] Tr. 19.
[30] Tr. 19-20.
[31] Tr. 24.

The ALJ also determined that Meyers had mild limitations in all four areas of mental functioning.[32]

Between Steps 3 and 4, the ALJ concluded that Meyers:

> [H]a[d] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with lifting and/or carrying up to 10 pounds occasionally and less 10 pounds frequently; standing and/or walking up to 2 hours and sitting up to 6 hours in an 8-hour workday; additional limitations include only occasional balancing as defined in the SCO (the Selected Characteristics of Occupations); only occasional climbing ramps or stairs, stooping, crouching; no kneeling or crawling; no climbing ladders, ropes, or scaffolds; only occasional overhead reaching with the bilateral upper extremities; only occasional exposure to cold or heat extremes, or vibration; no exposure to workplace hazards (including unprotected heights and dangerous machinery); no operational control of vehicles or similar moving equipment such as forklifts or tractors; limited to work that does not require peripheral vision, though individual can turn their head; and limited to only occasional depth perception needed to work with items smaller than a standard paperclip.[33]

In reaching this residual functional capacity ("RFC") determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Meyers' reported symptoms. With respect to the medical opinion evidence, the ALJ considered the

---

32 Tr. 21-22.
33 Tr. 27.

opinions of state agency consultants Dr. Minda Bermudez and Dr. Anthony Galdieri.[34] Dr. Bermudez found that Meyers had various postural and environmental limitations, and Dr. Galdieri assessed the same limitations on reconsideration.[35] The ALJ found these opinions "less persuasive" because, while both opinions were supported by references to consultative examinations, they were not consistent with evidence produced after these doctors gave their opinions.[36]

The ALJ also considered the opinion of vision consultative examiner Dr. Kimberly Zimmerman.[37] Dr. Zimmerman opined that Meyers had a vision impairment which necessitated some environmental limitations and prevented him from avoiding ordinary hazards in the workplace, reading small print, and from walking a block at a reasonable pace on rough or uneven surfaces.[38] The ALJ found this opinion generally

[34] Tr. 39-40.
[35] Tr. 39, 85, 108.
[36] Tr. 39-40.
[37] Tr. 40.
[38] Tr. 40, 738-38.

persuasive, noting that it was supported by references to Dr. Zimmerman's testing, and was consistent with the evidence of record.[39]

Next, the ALJ considered the opinion of medical consultative examiner Dr. James Goodyear.[40] Dr. Goodyear opined that Meyers had limitations to his abilities to lift, carry, sit, stand, walk, reach, push, pull, climb, balance, crawl, stoop, kneel, and crouch.[41] The ALJ found that Dr. Goodyear's opinion was supported by his own examination findings, but was not consistent with medical records produced after his opinion was given, and so the opinion was only partially persuasive.[42]

The ALJ also found the opinion of Dr. Ahmed Kneifati partially persuasive.[43] Dr. Kneifati opined most of the same limitations as Dr. Goodyear, with some variation to the specific contours of those limits.[44] The ALJ explained that Dr. Kneifati's opinions were supported by his

---

39 Tr. 40.
40 Tr. 41.
41 Tr. 40-41, 747-58.
42 Tr. 41.
43 Tr. 42.
44 Tr. 41, 997-1008.

own examination, but inconsistent with evidence produced after this opinion was given.[45]

Finally, the ALJ considered the opinion of ophthalmological neurologist Dr. William Cantore. Dr. Cantore found that Meyers' vision problems resulted in an inability to drive, as he did not meet Pennsylvania's requirements for driving.[46] The ALJ found this opinion persuasive, supported by Dr. Cantore's examination and consistent with other vision tests in the record.[47]

With respect to Meyers' symptoms, the ALJ found that Meyers' statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical evidence.[48] The plaintiff testified that his vision problems prevented him from driving and from resuming his prior employment as a security system installer.[49] He explained the details of his vision problems, which he attributed to his prior stroke, that also led to balance issues and

[45] Tr. 42
[46] Tr. 42, 970.
[47] Tr. 42.
[48] Tr. 29.
[49] Tr. 59-60.

migraines.[50] He told the ALJ about his difficulties walking, standing, and sitting.[51] As to mental health, Meyers explained that he suffered from memory loss and could not focus like he used to.[52]

The ALJ ultimately found Meyers' testimony to be inconsistent with the objective clinical findings.[53] The ALJ recounted the objective evidence during the alleged disability period, including an in-depth summary of Meyers' vision changes and cardiac condition.[54] The ALJ discussed evidence that from Meyers' neurological evaluations and cardiac procedures.[55] The ALJ also reviewed all Meyers' imaging.[56] Ultimately, the ALJ concluded Meyers was not as limited as he alleged.

Having made these findings, the ALJ found at Step 4 that the transferability of Meyers' past work was immaterial and found at Step 5 that Meyers could perform the occupations of document preparer or

---

50 Tr. 60-61, 65-66.
51 Tr. 61-62.
52 Tr. 62-63, 66-68.
53 Tr. 29.
54 Tr. 29-32.
55 Tr. 32-37.
56 Tr. 37-39.

bench assembler.[57] Accordingly, the ALJ found that Meyers had not met the stringent standard prescribed for disability benefits and denied his claim.[58]

This appeal followed. On appeal, Meyers alleges the ALJ erred in identifying suitable jobs at Step 5, failed to properly consider Meyers' mental health impairments and his obesity, and erred in his consideration of Meyers' reported symptoms. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will recommend the court affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[59] Substantial

---

[57] Tr. 44.
[58] *Id.*
[59] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[60] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[61] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[62]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[63] Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[64] The ALJ is not required to use "magic" words, but rather must discuss the evidence and explain the reasoning behind his or her decision with more than just

---

60 *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
61 *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
62 *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
63 *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
64 *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

conclusory statements.[65] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[66]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[67] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[68]

In making this disability determination, the ALJ follows a five-step evaluation.[69] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed

---

65 *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

66 *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

67 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

68 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

69 20 C.F.R. §§404.1520(a), 416.920(a).

impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[70]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[71] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[72] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[73]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from

---

[70] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[71] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[72] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[73] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

engaging in any past relevant work.[74] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[75]

### B. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.[76] Our review of those determinations is deferential.[77] However, the ALJ is required to "specifically identify and explain what evidence he found not credible and why he found it not credible."[78] An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence."[79] As the Third Circuit has

---

74 *Mason*, 994 F.2d at 1064.
75 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
76 *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009).
77 *Id.*
78 *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).
79 *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).

noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them."[80]

In accordance with the Social Security Rulings and Regulations, an ALJ must follow a two-step process to evaluate a claimant's reported symptoms: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record.[81] This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[82] To assist in the evaluation of a claimant's

---

80 *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

81 SSR 16-3p.

82 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

subjective symptoms, the Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[83]

C. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[84] Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Meyers alleges four errors by the ALJ.[85] The first is that the ALJ did not identify a significant number of jobs at Step 5. The ALJ, with

---

[83] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.

[84] *Biestek*, 139 S. Ct. at 1154.

[85] We note that substantial portions of Meyers' reply brief repeat his brief in support verbatim. The court's review indicated roughly 75% of the reply brief was repeated text. (*Compare* doc. 14 *with* doc. 17). As we have repeatedly reminded Meyers' counsel, there is no obligation to file a reply brief. *Ruggiero v. Bisignano*, No. 1:25-CV-604, 2025 WL 3903230 at *7

assistance from the VE, identified two occupations suitable for Meyers: document preparer and batch assembler.[86] Meyers argues that the occupation of document assembler is obsolete and that the ALJ failed to abide by the Social Security Administration's Emergency Message ("EM") 24027, which imposes additional requirements on an ALJ relying on certain occupations.[87] Meyers argues that the document assembler position is not actually available, that the lone remaining occupation fails to identify a "significant number" of jobs, and therefore, the ALJ's decision is not supported by substantial evidence. We disagree.

EM 24027 instructs that ALJs may not rely on certain jobs at Step 5 for a finding of "not disabled" without additional VE evidence describing

---

n.99 (M.D. Pa. Dec. 18, 2025); *Geibe v. Bisignano*, No. 1:24-CV-1400, 2025 WL 1570000, at *6 n.2 (M.D. Pa. June 3, 2025); *Hoppes v. Bisignano*, No. 24-1503, 2025 WL 1919491 at *8 n.3 (M.D. Pa. July 11, 2025); *see also, CSX Transp. Co. v. Novolog Bucks Cnty.*, 2006 WL 1451280, at *17 n.17 (E.D. Pa. May 24, 2006) ("Response, reply, and surreply briefs are intended to shed greater light on the substantive issues and address new arguments or nuances raised by opposing counsel; they are not fora for reiterating word for word one's prior argument.").

[86] Tr. 44.

[87] Emergency Message 24027 REV ("EM-24027 REV") (effective June 22, 2024) https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM (last accessed August 10, 2026).

the occupation as it is currently performed.[88] If the ALJ intends to rely on jobs identified in the EM, the ALJ must solicit additional testimony from the VE to establish that, "as the occupation is currently performed: [i]ts requirements are consistent with the individual's RFC, and [i]t exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant."[89]

"Document Preparer, Microfilming" is amongst the occupations named as potentially obsolete in EM 24027.[90] The ALJ in this case complied with the EM and obtained additional evidence from the VE about how document preparers work in the modern world:

> ALJ: Now, [VE], I'd ask you to reflect upon the sample positions you identified and I'd like to know, sir, are any of those or do any of those jobs involve more modern materials or processes than they were last updated in the DOT?
>
> VE: Yes, the primary one that I gave would be the document preparer. When the DOT was written that occupation was performed at an end product would be either microfilm or microfiche. It's all electronic now so the person is just creating electronic documents and not a raw material type of product.

---

[88] EM-24027 REV.
[89] *Id.*
[90] *Id*

> ALJ: Do you have the functional requirements, the exertion or the SVP levels changed?
>
> VE: No, it's the same process but the end result is electronic as opposed to something that you can, you know, have in your hands.
>
> ALJ: And your testimony as to the more modern materials and processes with respect to that job, what is the basis?
>
> VE: That's based on my seeing these positions operate.[91]

The ALJ also explained in the decision that the VE's testimony was the basis for finding document preparer an appropriate occupation, and that testimony was based on the VE's own observations.[92] Accordingly, we conclude that the ALJ complied with the EM, and therefore considered the number of jobs identified by the ALJ to total 47,000, which we conclude is sufficient to satisfy the requirement to identify a "significant number" of jobs that Meyers could perform.[93] There is no basis for a remand on this issue.

---

[91] Tr. 73-74.
[92] Tr. 45.
[93] *See e.g.*, *Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (finding that while there is no specific number equaling a "significant number," 20,000 jobs was sufficient to satisfy the requirement).

Meyers also argues that the ALJ failed to properly consider the impact of Meyers' mental health impairments on his RFC. At the outset, it is the plaintiff's burden to show that he is disabled at Steps 1 through 4,[94] and we are constrained to note Meyers never alleged disability due to mental health impairments. Further, while the ALJ did not discuss mental health impairments specifically within the RFC assessment, that is not necessarily error, since an ALJ's decision is "read as a whole."[95] Here, the ALJ discussed mental health in great detail at Step 2 of the evaluation process.[96] He closed that discussion by explaining that the "following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the [Step 2] mental function analysis."[97] While the ALJ used boilerplate language, we conclude it is sufficient since the detailed discussion of the plaintiff's mental health

[94] *Mason*, 994 F.2d at 1064.
[95] *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).
[96] Tr. 20-24.
[97] Tr. 24.

impairments assures the court that this ALJ did not overlook these impairments.[98] Accordingly, a remand is not required.

Meyers next contends that the ALJ failed to properly consider the effects of obesity, as required by SSR 19-2p. Under the agency's regulations, the ALJ must analyze the effects of a claimant's obesity on his or her ability to function.[99] This is particularly so when the ALJ identifies the claimant's obesity as a severe impairment at Step 2.[100] The Third Circuit has explained that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis" of a claimant's obesity.[101] Rather, so long as the ALJ "meaningfully consider[s] the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step[,]" a remand is not required.[102]

---

[98] *See Younge v. Berryhill*, Civ. No. 16-5271, 2017 WL 2978758 at *12-13 (E.D. Pa., May 31, 2017) (finding no error where this same boilerplate appeared after mental health was discussed only at Step 2).
[99] *See* SSR 02-01p, SSR 00-3p.
[100] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[101] *Diaz*, 577 F.3d at 504 (citations omitted).
[102] *Id.* at 504; *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014).

The ALJ clearly satisfied those requirements here. He stated explicitly that he considered obesity pursuant to 19-2p and explained in a fulsome paragraph the specific evidence that led him to conclude there was "not sufficient evidence that the claimant's obesity has exacerbated any condition to the point that his impairments meet or equal the requirements of any listed impairment under Appendix 1."[103] That passage indisputably shows compliance with 19-2p at Step 3.

As for the RFC, there is indicia scattered throughout the assessment indicating the ALJ considered obesity. The ALJ interwove references to body mass index ("BMI"), normal physical exams, and conservative obesity treatment into the assessment, and specifically cited BMI as a reason that Meyers was limited to sedentary work.[104] We conclude the ALJ adequately considered obesity at Step 3 and in the RFC assessment, and there was no error in the overall treatment of obesity in the decision.

---

103 Tr. 27.
104 Tr. 39.

Finally, Meyers asserts that the ALJ erred in his consideration of Meyers' self-reported symptoms. Specifically, Meyers claims that the ALJ improperly credited Meyers' ability to walk for exercise, relied on evidence that some of Meyers' complaints improved over time, and considered that Meyers declined psychotropic medications.[105] We conclude none of these arguments are availing.

First, contrary to the plaintiff's cited caselaw,[106] the ALJ considered Meyers' ability to walk as one of at least eight reasons to doubt Meyers' symptom reports, rather than as the sole or critical reason that he found Meyers' statements not entirely credible.[107] Second, Meyers' contention that the ALJ mischaracterized the record regarding his reports of improved pain in light of records that he had ongoing pain is no more than a request to re-weigh the evidence, which we have already explained we may not do.[108] Third, and finally, the ALJ was under no obligation to question Meyers regarding his decision to decline psychotropic

---

[105] Doc. 14 at 19-20.
[106] *Carradine v. Barnhart,* 360 F.3d 751, 756 (7th Cir. 2004); *Vertigan v. Halter*, 260 F.3d 1050 (9th Cir. 2001).
[107] Tr. 29.
[108] *Zirnsak*, 777 F.3d at 611.

medications, as SSR 16-3p is clear that such questioning is discretionary.[109] Moreover, even assuming that any of these claims about symptom consideration identifies error, we conclude any such error was harmless, as Meyers does not allege any prejudice from the ALJ's treatment of his symptoms.[110] We therefore conclude that a remand is not required.

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that

---

[109] *See* SSR 16-3p, 2017 WL 5180304 at*9 (Oct. 25, 2017) ("We *may* need to . . . ask [a claimant] why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.") (emphasis added).

[110] Social Security appeals are subject to harmless error analysis, under which a remand is warranted only if the error "prejudices a party's 'substantial rights[,]'" meaning the error "likely affect[ed] the outcome of the proceeding, . . ." *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016); *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014). The plaintiff carries the burden of proving that an error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

substantial evidence supported the ALJ's evaluation of this case, and recommend this decision be affirmed.

## IV. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner in this case should be AFFIRMED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or

recommit the matter to the magistrate judge with instructions.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated August 12, 2026.